**Geraldine JENNINGS, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

**No. 13629.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 7, 1957.

Decided May 29, 1957.

Petition for Rehearing Denied
June 20, 1957.

Mr. Laurence S. Fordham, Washington, D. C., with whom Mr. Irving R. M. Panzer, Washington, D. C. (both appointed by this Court), was on the brief, for appellant.

Mr. Harold H. Greene, Asst. U. S. Atty., with whom Mr. Oliver Gasch, U. S. Atty., and Messrs. Lewis Carroll and Arthur J. McLaughlin, Asst. U. S. Attys., were on the brief, for appellee.

Before PRETTYMAN, FAHY and DANAHER, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellant was convicted of a violation of the narcotics laws.[1] Her points on appeal go principally to the validity of her arrest and the legality of the seizure of certain narcotics paraphernalia and narcotics.

Police officers set about to investigate a report that heroin was being "capped"

---

1. Int.Rev.Code of 1954, § 4704(a); 26 U.S.C.A. § 4704(a).

at a certain address, a rooming house, and were properly admitted to the main hallway of the house. They proceeded to the designated door and knocked. One of the officers, testifying at the trial, said: "The door was opened and from the hallway I could see a hypodermic needle on the dresser which was located on the right side of the room. And looking, still looking from the hallway I observed a cream-colored envelope with two eye droppers and a cooker, a bottle top cooker, used by narcotics addicts, sticking out of this cream-colored envelope." Thus a misdemeanor was taking place in the presence of the police officers.[2] Two women were in the room. The officers identified themselves and entered. When one of them picked up the envelope he discovered in it, in addition to the protruding "cooker" and eye droppers, fourteen capsules of heroin. The officers formally placed the women under arrest.

We decide this case on its own specific facts. We are of opinion that the arrest was valid and the seizure was reasonable. The officers were on a routine investigation. They saw the paraphernalia, the possession of which is a misdemeanor, from a public hallway to which they had been properly admitted. They had, therefore, probable cause to enter the room to arrest appellant. They did enter immediately. We conclude that by this entry the officers intended to restrain and did restrain the appellant for the purpose of effecting her arrest.[3] The search, the picking up of the envelope from which the paraphernalia protruded, was incidental to the arrest, as appellant was in fact arrested before the search began. This entire sequence of events occurred almost simultaneously, the whole affair taking only a minute or two.[4]

Appellant also urges that the trial court mistakenly refused to rule upon the suppression of evidence. A motion to suppress the evidence seized in the room was made and denied before trial. The motion was renewed at the trial. The trial judge, Judge Holtzoff, had not been informed that the pre-trial denial of the motion had been without prejudice— "until she brings forth some more information about that room and the circumstances of her occupation." No such evidence was proffered at trial. The trial judge was of the impression that the pre-trial denial constituted the controlling rule of the case, but he permitted the witnesses to testify at length as to the circumstances surrounding the seizure. Neither appellant's trial counsel nor her counsel on appeal suggested that any further pertinent testimony could have been adduced. The trial judge permitted appellant's counsel to argue fully the question of legality of the seizure. At the conclusion of the trial, which was without a jury, the trial judge reviewed the evidence bearing on the point and stated: " * * * purely by way of dictum the Court expresses the view that the search and seizure were legal * * *." We agree with him that the seizure was reasonable.[5]

Affirmed.

2. 67 Stat. 97 (1953), D.C.Code, § 22–3601 (1951) (Supp. V); 67 Stat. 96 (1953), D.C.Code, § 23–306 (1951) (Supp. V); 52 Stat. 794 (1938), D.C.Code, § 33–416 (1951); Rev.Stat.D.C. § 397, D.C.Code, § 4–140 (1951).

3. Cf. Morton v. United States, 79 U.S. App.D.C. 329, 331, 147 F.2d 28, 30 (D.C. Cir.1945), certiorari denied, 324 U.S. 875, 65 S.Ct. 1015, 89 L.Ed. 1428 (1945); Price v. United States, 119 A.2d 718 (Mun.Ct.App.D.C.1956).

4. Fisher v. United States, 1953, 92 U.S. App.D.C. 247, 205 F.2d 702 (D.C.Cir. 1953), certiorari denied, 346 U.S. 872, 74 S.Ct. 122, 98 L.Ed. 381 (1953). See Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927); Agnello v. United States, 269 U.S. 20, 30, 46 S. Ct. 4, 70 L.Ed. 145 (1925).

5. United States v. Rabinowitz, 339 U.S. 56, 61–66, 70 S.Ct. 430, 94 L.Ed. 653 (1950).