**UNITED STATES of America,**
**Plaintiff,**
**v.**
**Maurice A. WHEELER, Defendant.**
**Cr. No. 14337.**

United States District Court
W. D. Pennsylvania.
April 2, 1959.

John Gavin, First Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Alexander Cooper, Pittsburgh, Pa., for defendant.

MARSH, District Judge.

The defendant, an attorney at law, was convicted under a one-count indictment charging him with income tax evasion in violation of § 145(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 145(b). He moves for a new trial on the following grounds:

(1) The verdict is against the weight of the evidence and was not supported by the evidence.

On the merits, the evidence was overwhelming, and not denied, that defendant failed to report substantial taxable income for the year 1950. The only defense advanced on the merits was that he did not knowingly and willfully intend to evade the tax. On abundant evidence, the jury found that the defendant willfully filed a false and fraudulent return for that year.

(2) The court erred (a) in refusing defendant the right to introduce evidence that the government obtained defendant's books and records by fraud, trickery and deceit; (b) in refusing to charge the jury on that issue; and (c) in failing to suppress the evidence for the reason that such was obtained by fraud, trickery and deceit.

These grounds present procedural problems under Rule 41(e), Fed.R.Crim. P., 18 U.S.C.A., and therefore a brief review of the background is in order.

After indictment, defendant moved, pursuant to Rule 41(e), to suppress the evidence obtained by the government from its examination of his books, records and files, on the grounds that his rights under the Fifth Amendment of the United States Constitution were violated.[1] There exists some doubt that a motion to suppress evidence pursuant to Rule 41(e) may properly include questions involving the Fifth Amendment. Biggs v. United States, 6 Cir., 1957, 246 F.2d 40, but compare In re Fried, 2 Cir., 1947, 161 F.2d 453, 1 A.L.R.2d 996, which involved a preindictment motion. Nonetheless, Judge Miller, an associate of this court, denied the motion holding that defendant's rights had not been violated under either the Fourth or Fifth Amendment.[2]

At the trial, before testimony was given, defendant renewed his motion to suppress the evidence as being obtained in violation of the Fourth and Fifth Amendments. On objection, this motion was denied. We think the ruling was proper for three reasons.

First, because Rule 41(e) commands that the motion *"shall be made before trial"* unless opportunity did not exist or defendant was not aware of the grounds. United States v. Sheba Bracelets, Inc., 2 Cir., 1957, 248 F.2d 134, 139–143.[3] The defendant had presented a timely motion and lost after extensive litigation. Thus he was barred from litigating it again on the same evidence at the trial. Judge Miller's decision became the law or controlling rule of the case. Waldron v. United States, 1955,

---

1. Defendant's original petition to suppress evidence seems to rely solely on a violation of the Fifth Amendment, but his petition for rehearing filed August 27, 1956, shows that in reality he was urging suppression for violation of both the Fourth and Fifth Amendments.

2. See unpublished Memorandum Opinion and Order, Criminal Action 14337, Miller,

D.J. For the the history of the protracted pretrial proceedings, see United States v. Wheeler, 3 Cir., 1958, 256 F.2d 745.

3. In Weeks v. United States, 1914, 232 U.S. 383, 395–396, 34 S.Ct. 341, 58 L. Ed. 652, similar practice was required prior to the enactment of Rule 41(e).

95 U.S.App.D.C. 66, 219 F.2d 37; United States v. Jennings, D.C.D.C.1956, 19 F.R.D. 311, affirmed 1957, 101 U.S.App.D.C. 198, 247 F.2d 784. In Jennings 19 F.R.D. at page 312, Judge Holtzoff said:

"[T]he Rule does not permit the Court to rehear or review the matter if a motion had been properly made and disposed of. There is sound reason for this procedure. Its purpose is to prevent the trial on the merits from being diverted to a consideration of tangential issues that can be properly isolated and determined in advance in the interest of efficiency."

In Waldron, 219 F.2d at page 41, Judge Prettyman aptly stated:

"The basic purpose of the rule is to prevent, so far as possible, the delay and attendant confusion resulting from attacks during a trial on the admissibility of illegally seized evidence. * * * Once the court has disposed of a point concerning the admission or exclusion of evidence, litigants must proceed to try the case accordingly."

To the same effect, see Nardone v. United States, 1939, 308 U.S. 338, at pages 341–342, 60 S.Ct. 266, at pages 267–268, 84 L.Ed. 307, and Weeks v. United States, 1914, 232 U.S. 383, 395–396, 34 S.Ct. 341, 58 L.Ed. 652.

It is unlikely that the Rule would have required a hearing before trial if it were contemplated that the same facts should be presented again to the trial judge, or to a jury. In view of current court congestion such time-consuming procedure is to be avoided if consistent with due process.[4]

■ Second, in the absence of new evidence, and none was offered, a judge should not place himself in a position whereby he might be required to overrule the decision of a judge of the same court in the same case. United States v. Wheeler, 3 Cir., 1958, 256 F.2d 745; TCF Film Corp. v. Gourley, 3 Cir., 1957, 240 F.2d 711.

■ Third, we apprehend that a postindictment ruling under Rule 41(e) is an interlocutory order in the course of a criminal proceeding pending before the court, which, if erroneous and a conviction ensues, would result in a new trial at the hands of the appellate court, even though no objection were made at the trial. Waldron v. United States, 1955, 95 U.S.App.D.C. 66, 219 F.2d 37, 41. Until that eventuality, the interlocutory order of Judge Miller stands as the law of the case which is binding on the trial judge. Defendant emphasizes that Judge Miller's order stated that defendant's motion was denied "without prejudice to defendant's right to object to the admission of evidence". At the threshold of the trial, the defendant did object to each and every government witness and to the admissibility of the government's evidence, and moved the trial judge to suppress that evidence at least twice; therefore, his rights have been fully preserved for appellate review. Cf. Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.

Next, defendant moved that the record made at the pre-trial hearings be made part of the testimony of the trial. This motion was also denied. Thereafter, throughout the trial, defendant persistently endeavored to relitigate the constitutional questions in order that *the jury* might decide that which had already been decided by Judge Miller. In response to repeated inquiries, the defendant advised that he had no additional or new evidence which had not been adduced at the pretrial hearings. Therefore, the court refused to permit introduction of testimony relating to the

---

4. Under some circumstances, such as new evidence of which defendant was not aware at the time of the preliminary hearing, it may be necessary to entertain again the motion to suppress, Gouled v. United States, 1921, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647; or submit *conflicting* evidence to a jury with respect to an admission allegedly obtained by fraud, Smith v. United States, 1954, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192.

constitutional questions or to permit the issues litigated and decided by Judge Miller to be submitted to the jury for decision.

Defendant vigorously argues that the constitutional issues should have been submitted to the jury. He points to Judge Miller's without prejudice order and cites United States v. Frank, 3 Cir., 1957, 245 F.2d 284, where the issues of trickery, fraud, and deceit were submitted to the jury. In that case, however, after the denial of a motion to suppress under Rule 41(e), *additional evidence* was developed at the trial before the *same* judge who had previously denied the motion.

■ We think it is well established that questions decided under Rule 41(e), particularly those relating to the competency of evidence obtained by alleged illegal search and seizure in violation of the Fourth Amendment, are legal questions for the court and are not for the jury. Universally the competency of evidence is a question of law for the court and not for a jury.

In Steele v. United States, 1925, 267 U.S. 505, 511, 45 S.Ct. 417, 69 L.Ed. 761, it was held that the question of competency of the evidence, by reason of the legality or otherwise of its seizure, was a question of fact and law for the court and not for the jury.

In Burris v. United States, 5 Cir., 1951, 192 F.2d 253, 254–255, it was held that issues to suppress under the Fourth Amendment are for the trial judge. The court stated:

"It was therefore entirely proper that the Court prohibit cross-examination of the witnesses upon this question when before the jury, and likewise refuse to permit argument

to the jury by counsel upon this question."

The government argued to the contrary in United States v. Guerrina, D.C. E.D.Pa.1955, 126 F.Supp. 609, 611, but the district judge concluded:

"[T]hat the question of suppression of evidence because of illegality of search and seizure is one for determination by the Court *and not by a jury.*" (Emphasis supplied.) [5]

What has already been said might very well apply to the question whether or not the evidence was obtained in violation of the Fifth Amendment since defendant sought and received a decision on his rights in that respect under Rule 41(e). Compare Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. As previously stated the defendant made this the primary issue for decision in his motion to suppress; it was decided against him by Judge Miller whose interlocutory order became the law of the case.

At the trial, defendant was permitted to cross-examine the government agents concerning everything they did and said to him when they requested permission to examine his records; and defendant was permitted to testify as to what those agents did and said. This testimony shows a complete absence of coercion, pressure or compulsion on the part of the agents. Indeed, the defendant testified that he voluntarily produced all his records upon request and fully cooperated with the agents.[6] Likewise, there was no evidence of any false statements, or of any affirmative deceitful or fraudulent misrepresentations; there was no promise of immunity. Therefore, since no factual disputes were developed on the issues of voluntariness, trickery, fraud

5. For other cases so holding, see Ford v. United States, 1927, 273 U.S. 593, 605, 47 S.Ct. 531, 71 L.Ed. 793; Batten v. United States, 5 Cir., 1951, 188 F.2d 75, 77; Roberson v. United States, 6 Cir., 1948, 165 F.2d 752, 754; United States v. Lustig, 2 Cir., 1947, 163 F.2d 85, 88; United States v. Adelman, 2 Cir.,

1939, 107 F.2d 497; United States v. Bianco, 2 Cir., 1938, 96 F.2d 97, 98; Vollmer v. United States, 5 Cir., 1924, 2 F.2d 551, 552.

6. Defendant's books and records were returned to him before trial.

or deceit, there was nothing for the jury to decide with reference to the Fifth Amendment. Williams v. United States, 1951, 89 U.S.App.D.C. 32, 189 F.2d 693; Smith v. United States, 1 Cir., 1954, 210 F.2d 496, 498, affirmed 1954, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192.

Defendant relies on Smith v. United States, supra, 348 U.S. at page 150–151, 75 S.Ct. at page 196, for the proposition that under the Fifth Amendment the question whether or not defendant was induced to incriminate himself by fraud, trickery or deceit is one of fact for the jury. But in that case on those issues conflicting testimony was given at the trial. There the defendant and his accountant testified that they had submitted a net worth statement to the agent in consequence of an *affirmative misrepresentation and promise of immunity. The agent denied the misrepresentation and the promise.* Thus there arose an issue of fact for the jury whether or not the net worth statement had been obtained by trickery, fraud or deceit practiced on defendant and his accountant. There was no disputed issue of fact in the case at bar such as existed in the Smith case.[7]

At the trial it was elicited from Revenue Agent Kreiger that he was a part of a special team of the Inspection Service whose primary duty was to investigate alleged misconduct of certain Internal Revenue employees; that Kreiger's particular duty was to audit certain tax returns, including those of the defendant, and to be alert for certain names in defendant's records. It was also shown or proffered that the suspected misfeasance of Revenue employees motivated the investigation of defendant's records; and that Kreiger failed to apprise or warn defendant that this investigation, in addition to auditing his tax returns, was also to ascertain wheth-

er his records would reveal the names of the suspected employees.

Defendant contends that this failure to disclose these facts to him prior to his voluntary production of his 1950 records was evidence on which the jury could find that he was induced to incriminate himself by trickery, fraud and deceit in violation of his rights under the Fifth Amendment.

It was on substantially the same evidence, albeit amplified, that Judge Miller decided as a matter of law that defendant's rights under the Fifth Amendment, as well as the Fourth Amendment, had not been violated and refused to suppress the government's evidence. If the pretrial ruling was wrong as a matter of law, the evidence should be suppressed and a new trial granted. But since it was unequivocally established that Kreiger did not reveal to defendant the primary purpose of the inspectoral team or its suspicions that defendant may have been involved with employee misfeasance, there was nothing on that score for the jury to decide.

Finally, defendant seems to contend in his brief, citing Biggs v. United States, supra, and Jennings v. United States, 1957, 101 U.S.App.D.C. 198, 247 F.2d 784, that questions relating to the Fifth Amendment—specifically to the suppression of evidence procured from confessions or admissions—should not be decided in motions to suppress under Rule 41(e), but should be dealt with "at the trial by the tribunal before which they were sought to be introduced". He contends that this is what Judge Miller intended. It seems to us that this argument completely overlooks the fact that it was defendant who, pursuant to Rule 41(e), requested and received a preliminary decision on the competency of the evidence procured from his records

7. Defendant admitted this distinction in his Petition for Reargument, page 7 et seq., filed November 15, 1955. On page 6 he stated: "In the case at bar since there is no conflicting evidence, the ques- tion of admissibility is one of law for the Court and not a fact for the Jury." He was not then represented by present counsel.

and thus must abide by that ruling in the absence of new evidence.

However, assuming the defendant's final contention is correct, we think there was no issue of fact for the jury to decide, and the trial judge was bound by the pretrial ruling of Judge Miller that the government's evidence was competent. United States v. Wheeler, supra.

██ It is established that failure to warn a person suspected of crime of his constitutional rights does not of itself make his confession or admissions involuntary, Wilson v. United States, 1896, 162 U.S. 613, 623, 16 S.Ct. 895, 40 L.Ed. 1090; Powers v. United States, 1912, 223 U.S. 303, 313, 32 S.Ct. 281, 56 L.Ed. 448. And it seems to be pretty well settled that if a taxpayer freely consents to a tax examination of his records at the request of an internal revenue agent,[8] as was done in this case, it is not to be concluded that his consent was enticed, induced, or rendered involuntary by the failure of the agent to divulge the purpose and instructions of his superiors or to warn the taxpayer that he is under suspicion of criminality.[9] Turner v. United States, 4 Cir., 1955, 222 F.2d 926, a case involving both the Fourth and Fifth Amendments. See, also, United States v. Achilli, 7 Cir., 1956, 234 F.2d 797, affirmed 1957, 353 U.S. 373, 77 S.Ct. 995, 1 L.Ed.2d 918; Vloutis v. United States, 5 Cir., 1955, 219 F.2d 782; United States v. Burdick, 3 Cir., 1954, 214 F.2d 768; Montgomery v. United States, 5 Cir., 1953, 203 F.2d 887, where the agent made affirmative representations that the investigation was "purely a civil matter".[10] In none of these cases does it appear that issues of trickery, fraud or deceit were submitted to the jury.

Hence, we think defendant's rights under the Fifth Amendment were not violated, and it was not error at the trial to refuse to suppress the government's evidence or submit the constitutional issues under the Fifth Amendment to the jury. The motion for a new trial will be denied.

---

8. The government has statutory authority to examine the records of a taxpayer. Internal Revenue Code of 1939, § 3614, 26 U.S.C.A. § 3614, reenacted in the 1954 Code, § 7602, 26 U.S.C.A. § 7602.

9. In United States v. Frank, supra, 245 F.2d at page 286, it was stated: "[W]e do not think any taxpayer considers an audit by a revenue agent to be a call for purely social purposes." This observation would be particularly pertinent to an attorney at law.

10. Contra: United States v. Wheeler, D.C.W.D.Pa.1957, 149 F.Supp. 445, and the authorities cited therein.